IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID NOPPER, an individual, dba PO'OKELA GROUP,

Plaintiff,

v.

IGD HOSPITALITY, INC., dba IGD GROUP, a Florida corporation,

Defendant.

No. 3:15-cv-00538-HZ

OPINION & ORDER

Sonia A. Montalbano
William A. Drew
ELLIOT OSTRANDER AND PRESTON, PC
707 S.W. Washington Street, Suite 1500
Portland, Oregon 97205-1718

Attorneys for Plaintiff

C. Andrew Gibson
STOEL RIVES LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204

Attorney for Defendant

HERNANDEZ, District Judge:

Plaintiff David Nopper, dba Po'okela Group, brought this action against Defendant IGD Hospitality, Inc., dba IGD Group, alleging that Defendant breached the parties' independent contractor services agreement. On February 3, 2016, Judgment was entered in favor of Plaintiff based on Plaintiff's acceptance of an Offer of Judgment. ECF 18. Plaintiff now moves for an award of attorney's fees and costs. I grant in part and deny in part the motion for fees and grant the motion for costs.

BACKGROUND

Defendant supplies and installs interior finishes in the form of wall and floor coverings such as paint, carpet, vinyl, ceramic tile, etc., primarily within the hospitality industry such as hotels. Pl. Decl. ¶ 3; ECF 22. Defendant hired Plaintiff as an independent contractor to sell Defendant's products and services to general contractors bidding on projects. Id. Plaintiff's job was to make sales and act as a point of contact between the contractor and Defendant. Id. ¶ 4.

The parties operated under two agreements, the "2012 Contract" and the "2013 Contract." Id. ¶ 5; Pl.'s Mem. in Support of Mot. for Fees, Ex. 1 (2012 Contract), Ex. 2 (2013 Contract); ECF 20-1, 20-2. Plaintiff states that in preparing the two contracts, he began by locating forms on the Internet. Pl. Decl. ¶ 5. After that, he and Matthew Ramaekers, Defendant's President and sole owner, drafted the contracts together without legal assistance. Id.

Ramaekers executed the 2012 Contract on June 5, 2012. 2012 Contract 6. The agreement appears to contain largely boilerplate language with provisions unique to these parties in italics. Id. at 1-6. For example, although the first boilerplate paragraph, titled "Engagement of Services," refers to an Exhibit A as setting forth "Project Assignments," there is no Exhibit A to

the 2012 Contract nor is there any other document that appears to be a "Project Assignment." Id. & ¶ 1. Instead, at the end of that paragraph, there is an "Activity Description" in italics which reads:

> *Business Development and Sales of Division 9 finishes (material procurement and installation execution) in the following industry segments: Hotel, Hospitality & Time Share, Commercial Construction, Federal and Department of Defense, Institution, Hospital and Assisted Living.*
> *Business Development and Sales of FF&E (Furniture, Fixture & Equipment), Design and Procurement projects in the same segments.*
> *Creating joint venture opportunities and alliances that are approved by the company.*
>
> *Assigned Territory: The United States, Caribbean and South Pacific and other areas agreed to by both parties.*

Id. ¶ 1.

The boilerplate section on compensation refers repeatedly to the payment of a fee for services as set forth in the nonexistent Project Assignment(s). Id. ¶ 2. In italicized language appearing at the end of that paragraph, however, Defendant committed to paying a "draw against commission of $5,000 per month, starting May 1, 2012, which shall continue through December 31, 2012. There after [sic] the draw shall be removed and the position shall be 100% commission." Id. The next paragraph, still italicized, addresses commissions, providing that all commissions were to be based on a "project mark-up" and that each commission was to be on a "case-by-case basis." Id. "A target markup of 7% - 10% range shall be used on each project as a benchmark." Id. Defendant was to disclose to the contractor the markup used at the time of bid submission. Id. Paragraph 2 also provided for Defendant to reimburse Plaintiff for reasonable expenses incurred in connection with the performance of services under the agreement. Id.

Paragraph 9.5 of the 2012 Contract provides that in the event of a dispute under the

agreement, the prevailing party is entitled to receive its reasonable attorney's fees, expert witness fees, and out-of-pocket costs incurred in connection with a proceeding required to resolve the dispute. Id. ¶ 9.5. Paragraph 9.10, appearing to be boilerplate, states that the agreement is the final, complete, and exclusive agreement between the parties which supersedes and merges all prior discussions between them. Id. ¶ 9.10.

The 2013 Contract was executed by the parties on May 6, 2013. 2013 Contract 4. It states that Plaintiff will perform services and be paid in accordance with the information in Exhibit 1. Id. ¶ 2. Exhibit 1 is appended to the contract. Id. at 5. It identifies the services to be performed as "Vice President of Business Development" and lists seven specific items under "Job Description." Id. Exhibit 1 further states, similar to the italicized compensation language in the 2012 Contract, that the position will be "commission only including agreed to expenses." Id. "The commission rate shall be on all direct sales for Division 9 Interior Finishes projects consisting of any material procurement and installation for [certain items as specified]." Id. "A project markup of no less than 7%" applied to "all opportunities" in Hawaii with a 5% markup on "all other projects." Id. "A commission of 20% of the net amount on all material procurement shall be included." Id. All "opportunities for commission reimbursement" were to be identified by both parties. Id. Defendant was to provide a copy of all signed contracts for Plaintiff's file. Id.

In the body of the 2013 Contract, Paragraph 15 is entitled "Entire Understanding" and states that "[t]his document and any exhibit attached constitutes the entire agreement and understanding of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force

and effect." Id. ¶ 15. However, Exhibit 1 to the 2013 Contract contains the following contrary language: "[t]his agreement does not supersede any previous agreement between the parties." Id.

Plaintiff states that the parties intended to include the attorney fee provision in the 2012 Contract. Pl. Decl. ¶ 7. In the 2013 Contract, Plaintiff describes that the form the parties initially used had a "lot of general provisions" including the one entitled "Entire Understanding." Id. Plaintiff and Ramaekers drafted the attachment to the 2013 Contract which "really captured the specific of what we had agreed upon." Id. This included revised compensation terms and a provision directing when payment was due. Id. Additionally, the parties "specifically included" the term specifying that "[t]his agreement does not supersede any previous agreement between the parties." Id. Plaintiff explains that the parties intended that neither party would be relieved of the obligations created by the 2012 Contract, including Defendant's obligation to pay Plaintiff for the work he had performed under that contract. Id. According to Plaintiff, the parties also intended that if a dispute arose "about payment for any of the contracts I obtained for [Defendant] under the 2012 contract, the terms of the 2012 contract would control, including recovery of attorney fees." Id.

Plaintiff obtained thirteen projects for Defendant in Hawaii. Id. ¶ 8. Of those, only two were under the 2013 Contract. Id. Defendant paid him only $25,000 in advances for his work, despite the 2012 Contract requiring $40,000 in advances. Id. ¶ 6 (2012 Contract required payment of $5,000 monthly advances from May to December 2012, totaling $40,000); Id. ¶ 9. The payments he did receive were under the provisions of the 2012 Contract and at least one of them was made after the 2013 Contract had been executed. Id. ¶ 9. Plaintiff never received any commission payments under either the 2012 or 2013 Contracts. Id.

Plaintiff repeatedly requested information about payment from Defendant. Id. ¶ 10. His requests were either put off or ignored. Id. Based on Defendant's refusal to pay him, he ended his relationship with Defendant in November 2013. Id. However, he continued to ask for information from Defendant about the contracts he had obtained for Defendant. Id. ¶ 11. Under the 2012 Contract, boilerplate language suggested that Plaintiff was required to invoice Defendant before he could be paid. Id.; see also 2012 Contract ¶ 2. Plaintiff did not receive the requested information and ultimately sent an invoice to Defendant based on his own records, some of which were estimates, for $526,659.71. Pl. Decl. ¶ 12. Plaintiff received no response. Id.

Plaintiff then hired an attorney. Id. ¶ 13. Before filing suit, Plaintiff asked his counsel to send a demand letter. Id. In response, an attorney in Hawaii began communicating with Plaintiff's counsel but then stopped. Id. Ultimately, Plaintiff believed he had no choice but to file a lawsuit. Id. ¶ 14.

The suit was originally filed in Multnomah County Circuit Court on or about December 8, 2014. Notice of Removal Ex. 1; ECF 1-1. Defendant removed the action here on April 1, 2015. Defendant filed an Answer to the Complaint on April 8, 2015, and its Corporate Disclosure Statement on July 31, 2015. ECF 3, 9. Aside from case scheduling matters, the only other case activity was a stipulated protective order which was signed and filed on September 9, 2015. ECF 11.

On January 29, 2016, Plaintiff filed a Notice of Acceptance of Offer of Judgment. ECF 17. The Offer of Judgment from Defendant, made pursuant to Federal Rule of Civil Procedure 68 and dated January 13, 2016, offered Plaintiff $100,000 "plus court costs and reasonable

attorney fees, if and where recoverable, incurred to the date hereof." Id. Plaintiff accepted the offer on January 28, 2016. Id. Entry of Judgment followed on February 3, 2016.

DISCUSSION

Plaintiff seeks $20,188 in fees and $691 in costs. Under Oregon law,

> [i]n any action on suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.

Or. Rev. Stat. § (O.R.S.) 20.096(1).

Plaintiff argues that there is no dispute that he is the prevailing party, having obtained a Judgment in his favor, and that the contract terms are clear. He argues that because the 2012 Contract provided for an award of attorney's fees to the prevailing party in the event of a dispute, and because Exhibit 1 to the 2013 Contract specifically states that the agreement does not supersede any previous agreement between the parties, the parties clearly intended that they would continue to be bound by the 2012 Contract. As such, absent any clear intent by the parties to waive their right to fees in connection with disputes under the 2012 Contract, Plaintiff argues he is entitled to his attorney's fees and costs.

Defendant opposes the fee motion, contending first that Plaintiff is not entitled to fees given that the 2013 Contract lacks a prevailing party attorney fee clause. Defendant makes additional alternative arguments directed to the amount of fees sought should the Court find Plaintiff entitled to fees in the first place.

/ / /

I. Entitlement to Fees

Defendant argues that the 2013 Contract's lack of a prevailing party attorney fee award and the "Entire Understanding" provision under which "any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect," result in no entitlement to fees for work performed under either the 2012 Contract or the 2013 Contract. Essentially, Defendant argues that the 2013 Contract canceled the fee provision in the 2012 Contract. This, Defendant continues, is evidence of the parties' intent to waive the right to fees for disputes arising under the 2012 Contract.

Defendant's argument ignores the contrary language in Exhibit 1 to the 2013 Contract where the parties expressly agreed that the new agreement did "not supersede any previous agreement between the parties." Plaintiff notes that the only evidence of the parties' intent is offered by Plaintiff who states that the parties intended the language in Exhibit 1 to control.

In diversity cases such as this, state law applies to contract interpretation issues. Beck v. Metro. Prop. & Cas. Ins. Co., No. 3:13-cv-00879-AC, 2015 WL 4112343, at *3 (D. Or. July 6, 2015). Contract construction is a question of law for the court. Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or., 313 Or. 464, 469, 836 P.2d 703, 706 (1992). The goal is to ascertain the parties' intent. Totten v. N.Y. Life Ins. Co., 298 Or. 765, 770, 696 P.2d 1082, 1086 (1985).

Oregon courts follow a three-step inquiry in contract construction. Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997). The first step is to examine the text of the disputed provision, in the context of the document as a whole. Id. If the disputed provision is clear, the inquiry ends. Id.

When considering a written contractual provision, the court's first inquiry is what

> the words of the contract say. . . . To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of a contract as a matter of law.

Id. (internal quotation marks omitted) (ellipsis in Yogman).

If the contractual provision is ambiguous, the court proceeds to the second step of the interpretation analysis: examining extrinsic evidence of the parties' intent. Yogman, 325 Or. at 363, 937 P.2d at 1022. The court is to pursue the parties' intent if possible. Id. at 364, 937 P.2d at 1022 (citing O.R.S. 42.240).

The contrary provisions create an ambiguity. Thus, I examine extrinsic evidence of the parties' intent. Plaintiff's Declaration is the only relevant evidence in the record. As noted above, he states that the parties executed both contracts without legal assistance, based on boilerplate forms obtained from the Internet. In the 2012 Contract, the boilerplate language contrasts easily and visibly with the italicized provisions specific to the agreement between these parties. That italicized language addresses job duties and compensation, among other things. While the 2013 Contract's boilerplate is less obvious given the lack of contrasting italicized provisions, it is clear that the provisions in Exhibit 1 were the non-boilerplate specific terms. Giving effect to the non-boilerplate provision in Exhibit 1 stating that the agreement does not supersede any prior agreement is consistent with the intent of the parties, as described by Plaintiff, to continue Defendant's obligation to pay Plaintiff for work under the 2012 Contract and to continue the prevailing party attorney fee provision in case of a dispute. I reject Defendant's argument that the 2013 Contract cancelled or replaced the prevailing party attorney fee provision in the 2012

Contract. Plaintiff is entitled to fees.

II. Amount of Fees

A. Date of Offer of Judgment

Defendant contends that Plaintiff is entitled to fees only through January 13, 2016, the date the Offer of Judgment was made. Plaintiff seeks fees through January 28, 2016, the date he accepted the offer. Although neither party cites to any cases on this issue, a 1995 Ninth Circuit decision establishes that "the terms of the offer . . . control the cut-off of attorney's fees and costs." Guerrero v. Cummings, 70 F.3d 1111, 1114 (9th Cir. 1995). In that case, the Rule 68 offer allowed judgment against the defendants and in favor of the plaintiff for $1,500 "plus reasonable attorney fees and costs incurred by this plaintiff prior to the date of this offer in an amount to be set by the court." Id. at 1112-13. The court held that the "plain language" of the offer limited attorney's fees to those accrued prior to the date of the offers[.]" Id. Thus, although the civil rights plaintiff would have been entitled to attorney's fees and costs accruing after the date of the offer under the applicable fee-shifting statute if he had prevailed in the litigation, the acceptance of the Rule 68 offer "clearly and unambiguously waived attorney's fees incurred" after the date of the offer. Id. at 1113.

Decisions from this Court have both applied and distinguished Guerrero in analyzing issues regarding the interpretation of a Rule 68 offer of judgment. E.g., Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1030 (D. Or. 1996) (Rule 68 offer which included "an additional amount for accrued costs and attorney's fees, which additional amount shall be determined with FRCP Rule 54 and Local Rule 265" was, in contrast to the offer in Guerrero, ambiguous as to cut-off date), aff'd, 116 F.3d 485 (9th Cir. 1997); Flores v. Fergiss Inc., No. 3:13-cv-01480-KI,

2014 WL 1123638, at *2 (D. Or. Mar. 20, 2014) (offer of judgment including "reasonable attorney fees *incurred as of the date of this offer*" unambiguously cut off the costs and attorney fees as of the date of the offer; citing Guerrero); Sanchez v. Fergiss Inc., No. 3:13-CV-01481-KI, 2014 WL 1123646, at *2 (D. Or. Mar. 20, 2014) (same).

Courts interpret terms in an offer of judgment using the "usual rules" of contract construction, including construing any ambiguities against the drafter. Herrington v. County of Sonoma, 12 F.3d 901, 907 (9th Cir. 1993); Flores, 2014 WL 1123638, at *2 ("When a plaintiff accepts an offer of judgment, the 'usual rules of contract construction' apply when interpreting the terms of an offer") (quoting Guerrero, 70 F.3d at 1113).

In addition to the $100,000, Defendant offered to pay "court costs and reasonable attorney fees . . . incurred to the date hereof." Offer of Judgment 1 (emphasis added). The language is unambiguous: only the fees "incurred to the date hereof" were offered. Plaintiff suggests that the "date hereof" is unclear as to whether it refers to the date of the offer or the date of the acceptance. I disagree. The word "hereof" can refer only to the date of the offer because that is the only act occurring as of that date. Defendant offered to allow the entry of judgment in a certain amount and costs and fees incurred to the date "hereof." Because no acceptance of the offer had occurred, "hereof" cannot have meant the date of acceptance. Additionally, the plain meaning of "hereof," is "of this writing or document[.]" Webster's Third New Int'l Dictionary 1059 (2002).

The offer unambiguously refers to the date the offer was made, and thus, only fees up to that date were included in the offer. Like the plaintiff in Guerrero, by accepting the offer, Plaintiff waived the right to fees incurred after January 13, 2016, the date of the offer. According

to Plaintiff, the fees incurred through January 13, 2016 are $13,478. Pl.'s Mem. 10 n.6; ECF 20.

B. Reduction for 2013 Projects

Defendant argues that if the Court concludes that Plaintiff is entitled to fees despite the language in the 2013 Contract, and the Court allocates Plaintiff's claim between the 2012 Contract and 2013 Contract, Plaintiff's fee request should be reduced by sixty-seven percent.[1] Defendant contends that *when* Defendant signed project contracts is not the relevant inquiry to determine whether the project arose under the 2012 Contract or the 2013 Contract. Rather, Defendant contends it is when the project contract was *performed* that matters because Plaintiff was not just a "mere salesman," but instead was a "construction manager who bound himself to help close out projects." Def.'s Opp'n 4. With the project performance as the relevant date, Defendant then argues that most of the projects were performed after execution of the 2013 Contract. Finally, Defendant argues that Plaintiff's counsel spent the majority of her time at the January 22, 2016 deposition of Ramaekers inquiring about events surrounding or subsequent to the May 2013 Contract.

As explained above, the language of Exhibit 1 providing that the agreement "does not supersede any previous agreement between the parties" means that the prevailing party attorney fee provision in the 2012 Contract continued to apply to the parties' relationship. Thus, I reject Defendant's position that recoverable fees are limited to those incurred pursuing compensation owed for work performed by Plaintiff under the 2012 Contract.

---

[1] How Defendant arrived at this figure is not entirely clear but it appears to be based on Defendant's assertion of the percentage of time Plaintiff's counsel spent during the only deposition taken in the case asking questions about the May 2013 Contract. Def.'s Opp'n 4; ECF 24.

Moreover, even if I were to consider apportioning fees, Plaintiff's Declaration stating that of the thirteen projects he landed for Defendant, only two were under the 2013 Contract, is the only direct evidence regarding the number of projects. Additionally, I disagree with Defendant that the time of the performance of the project is the relevant time for assessing when Plaintiff's right to compensation accrued. The contracts themselves show that Plaintiff was engaged to develop business and sell products. 2012 Contract ¶ 1 ("Business Development and Sales"); 2013 Contract, Ex. 1 ("Vice President of Business Development"). Although Plaintiff may have had some continuing duties, his primary responsibility was sales. Thus, the date Defendant signed the project contract is the controlling date because it aligns better with Plaintiff's primary duty.

C. Statutory Factors

In a 2014 Opinion, Judge Aiken explained that

> "[u]nder Oregon law the prevailing party is 'entitled to reasonable attorneys' fees in addition to costs and disbursements' in any action based on a contract that specifically provides for an award of attorney's fees to the prevailing party." Copeland–Turner v. Wells Fargo Bank, N.A., 2012 WL 92957, *1 (D. Or. Jan.11, 2012) (quoting Or. Rev. Stat. § 20.096(1)). After establishing that the contract allows for fees and which party prevailed, an award pursuant to Or. Rev. Stat. § 20.096 "is mandatory; the trial court has no discretion to deny it, although it does have discretion as to what amount is 'reasonable.'" Benchmark N.W., Inc. v. Sambhi, 191 Or. App. 520, 523, 83 P.3d 348 (2004) (citation omitted); see also Gates v. Deukmejian, 987 F.2d 1392, 1400–02 (9th Cir. 1992) (court is required to ensure an award's reasonableness, regardless of whether the opposing party objected to it). Such awards "are generally made in reference to the factors listed in O.R.S. 20.075(1) and (2)." Copeland–Turner, 2012 WL 92957 at *1.

Unum Life Ins. Co. of Am. v. Martin, No. 6:13-cv-00158-AA, 2014 WL 3046017, at *2 (D. Or. July 1, 2014).

The factors under O.R.S. 20.075(1) relate primarily to parties' behavior during litigation,

while the factors under O.R.S. 20.075(2) relate primarily to the quality of the legal services at issue. Subsection (2) makes clear that in determining the amount of fees, factors from both subsections are to be considered. O.R.S. 20.075(2). The Court "satisfies the requirements of § 20.075 by including in its order a brief description of or citation to the factors on which it relied when granting or denying an award of attorneys' fees." Sterling Sav. Bank v. Sequoia Crossing, LLC, No. 09-555-AC, 2010 WL 3210855, at *3 (D. Or. Aug. 11, 2010) (internal quotation marks omitted).

In support of the requested fees, Plaintiff states, as to the O.R.S. 20.075(1) factors, that (1) Defendant never complained about Plaintiff's performance, Plaintiff continued to work for Defendant despite not receiving the compensation he was entitled to, and Plaintiff's requests for information were ignored or delayed until he commenced this lawsuit; (2) Plaintiff's claims were objectively reasonable given that he provided services pursuant to a contract and was not paid; in contrast, Defendant asserted almost two dozen affirmative defenses, many of which were not objectively reasonable; (3) a fee award would encourage those with good faith claims to bring them; (4) an award of fees would send a message that parties should not assert baseless defenses; (5) Plaintiff's efforts both in litigation proceedings and in pursing settlement were reasonable; and (6) Plaintiff is not seeking an enhanced prevailing party fee. Pl's Mem. 6-8; see also Montalbano Decl. ¶¶ 19-21; ECF 21.

As to the 20.075(2) factors, Plaintiff states: (1) although his claims were not novel, Defendant's slow production was challenging and Plaintiff needed information solely in Defendant's control which did not come until later in the case; Plaintiff relied on counsel with knowledge of breach of contract claims, who was familiar with federal court, and who

specializes in business and employment law; (2) based on the 2012 Oregon State Bar Economic Survey, Plaintiff's counsel's $285 hourly rate (until December 31, 2015 and $300 per hour for time spent in January 2016), is reasonable given her nineteen years of experience and specialization; (3) Plaintiff recovered $100,000 when he believed he was owed over $500,000 and demanded approximately $700,000 in his state court Complaint; and (4) in an effort to avoid what was anticipated to be hard-fought litigation over issues for which there was no legal basis, Plaintiff accepted the Offer of Judgment. Pl.'s Mem. 8-11; see also Montalbano Decl. ¶¶ 9, 13-15, 18.

Defendant's arguments in opposition are unpersuasive and unsupported. On the O.R.S. 20.075(1) factors, Defendant asserts that Plaintiff's claim was "trumped up" and pursued with "reckless abandonment." Def.'s Opp'n 6. However, given that Defendant did not move to dismiss, did not force Plaintiff to file a motion to compel, did not move for summary judgment, and ultimately offered to pay $100,000 to settle Plaintiff's claims, the record fails to establish that Plaintiff's claim was "trumped up" or that his case was a "classic fishing expedition, through and through." Id.

Defendant asserts that Rule 68 is designed to allow defendants to deal with "recalcitrant litigants," which, according to Defendant, describes Plaintiff. Neither the text of the Rule nor case law indicates that containing disobedient or noncompliant parties is the aim of Rule 68. Rather, Rule 68 is intended to promote settlement of cases. E.g., Goldberg v. Pac. Indem. Co., 627 F.3d 752, 757 (9th Cir. 2010) (Rule 68 is "meant to encourage settlement of litigation"; the rule "promote[s] settlement, at least in part, by providing an incentive for defendants to make offers of judgment"); Herrington, 12 F.3d at 907 (purpose of Rule 68 is "to encourage settlement

of legal disputes by forcing a plaintiff to weigh the risk of incurring post-offer costs and fees he may not be able to recover even if successful on his claim"). Defendant's characterization of the purpose of the Rule is without support in the law.

Defendant also asserts that Plaintiff could have resolved the matter and mitigated his damages had he presented proper invoices or engaged Defendant early on to resolve the matter. But, Plaintiff's counsel's time records show that for approximately four months, before the Complaint was filed in December 2014, Plaintiff's counsel communicated with opposing counsel regarding Plaintiff's claim, including sending a demand letter. Pl.'s Mem. Ex. 7 at 1-2. And, Plaintiff himself states that he tried to resolve the matter before hiring counsel and Defendant failed to provide him with requested information during that time, prompting him to submit an invoice based on estimates. Pl. Decl. ¶ 12. The record does not support Defendant's assertion that Plaintiff's failure to resolve the matter "early on" contributed to unreasonable fees or claims.

Although Defendant contends that Plaintiff's "needless[] inflation" of his claims was the basis for Defendant's assertion of the "warranted" defenses it asserted, it is clear from a review of the Answer that many defenses were objectively unreasonable. For example, Defendant asserted a statute of limitations defense to a claim that had a six-year statute of limitations and was based on contracts executed in 2012 and 2013. Defendant also asserted a defense asserting that Plaintiff's claims were barred by the superseding or intervening negligence of others. But, this was a contract action, not a tort action, and the defense does not apply. E.g., Ash v. N. Am. Title Co., 223 Cal. App. 4th 1258, 1274, 168 Cal. Rptr. 3d 499, 511 (2014) ("defense of intervening and superseding cause applies in tort cases. In contract cases, the defense does not absolve the defendant of liability[.]"), reh'g denied, (Mar. 5, 2014). Another suspect defense is "Licensure"

in which Defendant contended that Plaintiff failed to plead and prove licensure as required by law. As Plaintiff notes, however, he was a salesman and no license was necessary to perform his services. Pl. Decl. ¶ 4.

In arguing that the Court should deny fees as a disincentive to parties who assert claims which they end up settling for "14 cents on the dollar," Defendant continues to assert that Plaintiff's claim was baseless and inflated by over 700%. Def.'s Opp'n 7. But, Defendant fails to offer any facts suggesting that Plaintiff's initial invoice, sent before he obtained counsel and stating that he was owed $526,659.71, was baseless or otherwise unreasonable and unsupported. Given that the demand in his Complaint was for just under $700,000 and his $526,659.71 was an estimate, the record does not establish that the original demand was out of sync with the invoice.

Plaintiff and his counsel both make clear that it was not until the conclusion of Ramaekers's deposition during which he testified that Defendant was being sued in connection with work on a project for which Plaintiff believed he was owed $390,000, and further stated that Defendant was being sued or was involved in disputes with a number of contractors on projects that Plaintiff had procured for Defendant, that Plaintiff determined to accept the Offer of Judgment. Pl. Decl. ¶¶ 17, 18; Montalbano Decl. II ¶¶ 4, 5; ECF 27. These facts show that there are reasons other than the initial value of the claim for Plaintiff's decision to accept the offer of $100,000 when he believed he was owed more.

Finally, as to the O.R.S. 20.075(2) factors, Defendant has no issue with the amount of Plaintiff's counsel's hourly rate and makes only a conclusory assertion that the fees were unreasonably incurred. I have reviewed the hours Plaintiff's counsel expended in the litigation and conclude that under all of the relevant factors of O.R.S. 20.075, they were reasonably

incurred. I also find that the requested hourly rates for all attorneys and paralegals are reasonable.

III. Costs

Plaintiff seeks $691 in costs to which Defendant does not object. The costs incurred were $531 for the filing fee and $160 for service. Montalbano Decl. ¶ 22. I award Plaintiff the requested costs.

CONCLUSION

Plaintiff's motion for attorney fees [19] is granted in part and denied in part. Plaintiff's motion for costs [23] is granted. Plaintiff is awarded $13,478 in fees and $691 in costs.

IT IS SO ORDERED.

Dated this 18 day of April, 2016

Marco A. Hernandez
United States District Judge